IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-00991-CMA-KMT

ESTATE OF JEFFREY MELVIN,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO, *et al.*,

    Defendants.

_____

**RESPONSE TO COLORADO SPRINGS' MOTION TO DISMISS [Doc. 41]**
_____

### I.    INTRODUCTION AND FACTUAL BACKGROUND

On April 26, 2018, two officers employed by Defendant Colorado Springs killed Jeffrey Melvin. As alleged in Plaintiff's complaint, the officers' conduct was fully consistent with the City's customary policing. Plaintiff alleged that the Individual Defendants killed Mr. Melvin pursuant to the customs and unconstitutionally deficient training of Defendant Colorado Springs. [Doc. 30] ¶¶ 42-44. It is customary for Colorado Springs Police Department ("CSPD") officers to use excessive force, particularly against people of color, and then bring false charges to cover the use of force. *Id.* ¶¶ 38-39. Though the Individual Defendants put Mr. Melvin in a medically induced coma that he would never wake up from, they charged him with resisting arrest and interference with a public official. *Id.* ¶ 40. Neither Individual Defendant was disciplined by Colorado Springs for killing Mr. Melvin. *Id.* ¶ 41.

Similar constitutional violations in the years prior to Mr. Melvin's killing, all of which included an arrest without probable cause and/or the use of excessive force,

1

established Colorado Springs' custom of making arrests without probable cause and using excessive force. *Id.* ¶¶ 44-51. CSPD officers' August 2019 killing of De'Von Bailey, as he was simply running away, further evidences Colorado Springs' custom of excessive force, especially against African Americans. *Id.* ¶ 52. Statistics on CSPD's use of force in the years leading up to the Individual Defendants' killing of Mr. Melvin and Mr. Bailey indicated that CSPD disproportionately uses force against Black men, and yet Colorado Springs did nothing to remedy this custom and practice. *Id.* ¶¶ 58-61.

Colorado Springs knew from CSPD's history of using excessive force, particularly against people of color, that its officers, like the Individual Defendants, were likely to continue to use such unreasonable and excessive force. *Id.* ¶ 53. In light of this knowledge, Colorado Springs could have and should have trained its officers about the proper use of force, the prohibition against excessive force, and how to recognize and guard against implicit and explicit racial bias in their interactions with the public. *Id.* ¶ 54. Rather than train its officers adequately, Colorado Springs fosters "a policy of inaction," in which it deliberately chooses not to properly train, supervise, investigate, and/or discipline its employees despite knowing of a pattern of constitutional violations. *Id.* ¶¶ 55-58. The deliberate decision not to properly train, supervise, or discipline its officers for these types of constitutional violations serves best to actually train those officers that such violations are approved practice. *Id.* ¶ 62. And this type of informal training only causes future instances of excessive force to be inevitable. *Id.* Colorado Springs' clear approval of the previous constitutional violations "caused and was the moving force behind the Individual Defendants' use of excessive force against Mr. Melvin" and Colorado Springs' deliberate decision not to discipline

them for killing Mr. Melvin "will lead to more unconstitutional conduct." *Id.* ¶ 64.

These are the allegations the Court is required to accept in resolving the City's motion. Because Plaintiff has plausibly pleaded Colorado Springs' municipal liability in its officers' killing of Mr. Melvin, the motion to dismiss must be denied.

## II.   LEGAL STANDARD

"There is a strong presumption against the dismissal of claims under [Fed. R. Civ. P. 12(b)(6)]." *Blevins v. Reid*, 2008 U.S. Dist. LEXIS 46168, at *9 (D. Colo. June 12, 2008) (citing *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999)). The court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted). A complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Courts have repeatedly rejected any heightened pleading standard for municipal liability claims. A well-pleaded claim of municipal liability is one that simply "provide[s] fair notice to the defendant, [which] requires more than generically restating the elements of municipal liability." *Taylor v. RED Dev., LLC*, 2011 U.S. Dist. LEXIS 97985, at *9 (D. Kan. Aug. 31, 2011) (quoting *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011)). "The reasons for not requiring heightened fact pleading in a § 1983 municipal liability complaint remain even in the wake of *Twombly* and *Iqbal*: a plaintiff, as an outsider to municipal government, is not expected to have

3

information about a city's official policies, practices, or training programs at the pleading stage." *Walker v. Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14 (D. Colo. May 29, 2012) (Ebel, J.). "To require more could foreclose legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support." *Id.* at *15-16.

### III. ARGUMENT

A municipality is liable for constitutional torts if its policy, practice, or custom caused the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978); *D.T. v. Indep. Sch. Dist.*, 894 F.2d 1176, 1187 (10th Cir. 1990); *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 308 n.4 (10th Cir. 1985). Plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998).[1] A policy or custom can be established in many ways, including, as relevant here, demonstrating either the existence of "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law" or "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation omitted). And, importantly, in this case all

---

[1] As no individual Defendant has sought to dismiss any of Plaintiff's claims, and it is "not the Court's responsibility to *sua sponte* construct arguments in support of Defendant[s'] [Partial] Motion to Dismiss," this Court should assume the Individual Defendants violated Plaintiff's rights as alleged in the Amended Complaint for purposes of evaluating the Motion to Dismiss. *Carbajal v. St. Anthony Cent. Hosp.*, 2013 U.S. Dist. LEXIS 129034, at *33-36 (D. Colo. July 8, 2013), *report and recommendation rejected in part on other grounds*, 2013 U.S. Dist. LEXIS 129036.

4

Defendants (the City and the individuals) will ***admit*** that the officers' conduct was engaged in pursuant to official policy, practice, and customs. They acted the way they did because the City trained them to do so, and approved of their conduct, evidencing that the conduct that caused Mr. Melvin's death is fairly attributable to the City itself.

### A. <u>Plaintiff has plausibly pled Defendant Colorado Springs' custom of excessive force and arrests without probable cause.</u>

To plead a municipal liability claim based on the municipality's custom, the plaintiff must plausibly allege:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the…[municipality's] employees;
> (2) Deliberate indifference to or tacit approval [of] such misconduct by the…[municipality's] policymaking officials…after notice to the officials of that particular misconduct; and (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the…[municipality's] custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir.1993). Establishing an informal policy or custom requires the plaintiff to show that the conduct was "widespread." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Doing so shows, "in effect, a policy of inaction in the face of knowledge that municipal officials are routinely violating a specific constitutional right, thus becoming the functional equivalent of a decision by the [municipality] itself to violate the Constitution." *Trujillo v. City & Cty. of Denver*, 2017 U.S. Dist. LEXIS 57530, at *10-11 (D. Colo. Apr. 14, 2017)(citation omitted).

### i. *Allegations of other constitutional violations plausibly show Colorado Springs' unconstitutional customs.*

Plaintiff has extensively and plausibly pleaded the existence of a continuing, persistent custom and practice of unconstitutional conduct, certainly sufficient to survive the motion to dismiss. Generally, "the existence or nonexistence of such a

policy, practice, or custom is a question of fact for the jury." *Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019). Here the allegations in the Amended Complaint plausibly show "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, and the involvement of multiple officials in the misconduct." *Arakji v. Hess*, No. 15-cv-00681-CMA, 2015 U.S. Dist. LEXIS 161600, at *16-17 (D. Colo. Dec. 2, 2015) (quoting *Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 U.S. Dist. LEXIS 97985, at *3 (D. Kan. Aug. 31, 2011)).

In the years preceding the Individual Defendants' killing of Mr. Melvin, CSPD officers had arrested individuals without probable cause and/or used excessive force, particularly against people of color. [Doc. 30], ¶¶ 44-51. Several of these cases were settled for hundreds of thousands of dollars each. *Id.* ¶¶ 45, 47, 49. Contrary to Colorado Springs' argument, "no set number" of incidents is required to demonstrate liability against the city, *Arakji*, 2015 U.S. Dist. LEXIS 161600, at *18, but judges in this District have held that three or more examples are sufficient to establish a custom for purposes of municipal liability. *See, e.g., Estate of Valverde v. Dodge*, 2017 U.S. Dist. LEXIS 131402, at *13 (D. Colo. Aug. 17, 2017), *rev'd on other grounds*, 2020 U.S. Dist. LEXIS 24083 (10th Cir. July 30, 2020); *Sekerak v. City & County of Denver*, 1 F. Supp. 2d 1191, 1199 (D. Colo. 1998). Likewise, the alleged pattern of misconduct also shows Colorado Springs' constructive notice and deliberate indifference: "[w]here plaintiff has alleged numerous instances of prior misconduct, similar to the misconduct alleged here, the Court can plausibly infer that the [municipality] had actual or constructive knowledge of the risk that the defendant officers would violate the constitutional rights of its citizens in this manner." *McComb v. Ross*, 202 F. Supp. 3d 11, 18 (D.D.C. 2016)

(alteration omitted). "[A] municipality's "continued adherence to an approach that [it] know[s] or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of [its] action—the 'deliberate indifference'—necessary to trigger municipal liability." *Brown*, 520 U.S. at 407. Do Plaintiff's allegations ***prove*** that there is a custom, policy, or practice of unconstitutional policing? Maybe not, but such proof is not required at this juncture. Do the allegations ***plausibly allege*** such a situation in Colorado Springs? Definitely.

Defendant's argument as to the level of specificity required in previous cases is erroneous and absurd. *See, e.g.*, [Doc. 41] at 10 (noting that none of the previous cases involved "the use of pepper spray or a Taser on someone who 'did not immediately submit' to handcuffing but rather tried to flee by jumping through a second story window and running away").[2] Such a threshold would effectively render municipalities immune, so long as the municipality had not previously (and repeatedly) committed *exactly the same* constitutional violation in *exactly the same* circumstances.

Similarly, Defendant argues that because some of the previous cases were settled (for substantial sums of money), they cannot be viewed as supportive of Plaintiff's claim against the City. *See* [Doc. 41] at 10. Defendant's argument, taken to its logical conclusion, would preclude a plaintiff from establishing a custom based on multiple prior constitutional violations, so long as defendants paid off meritorious

---

[2] Defendant's insistence that these examples were deemed not similar enough to a completely different case—one in which Colorado Spring botched a sting operation and then attempted to cover up by arresting the wrong man for child sex crimes—is irrelevant to the question of whether previous cases are appropriately similar to *this* case. Also, the *Metzler* order dismissing the plaintiff's claim against the City is pending appeal. *See Metzler v. City of Colorado Springs et al.* (10th Cir. Case No. 20-1079).

cases. But such militates in *favor* of finding a custom and practice rather than against it. Plaintiff has alleged the merit of these cases, and those allegations must be taken as true at this stage. *Kerber*, 647 F.3d at 959. Plaintiff need not (yet) establish evidence that the examples recited are meritorious; he has already pleaded that they are, and this Court must take these allegations in the light most favorable to Plaintiff. *Valverde*, 2017 U.S. Dist. LEXIS 131402, at *13 (holding that for purposes of a motion to dismiss, the court must "[treat] the specific examples as true" and noting that "[t]he outcome of any of the lawsuits is not relevant to the issue at hand" (rev'd on other grounds)); *accord J.M. v. Cty. of Stanislaus,* 2018 U.S. Dist. LEXIS 190855, at *15-18 (E.D. Cal. Nov. 6, 2018) ("The fact that the alleged incidents do not include findings by a competent court that deputies used unconstitutional levels of force is not dispositive," because the court must accept all allegations as true and the plaintiffs "offered enough detail" to show "it [was] plausible that [the defendant] had a custom or policy which was the moving force behind the use of excessive force against [the plaintiff].").

### ii. Colorado Springs's failure to discipline the Individual Defendants for killing Mr. Melvin or other CSPD officers for similar conduct shows that their conduct was pursuant to the City's customs.

Furthermore, approval of unconstitutional conduct provides compelling evidence that an officer's conduct must have been engaged in pursuant to municipal policy, custom, or practice. There may be no better way to determine whether an officer's conduct was "pursuant" to the municipality's customary practice—its standard operating procedure—than by assessing that municipality's response to the event. The City's response provides the best proof of whether the officers' conduct conformed with (was "pursuant to") City custom, policy, and practice: if the conduct had deviated from approved behavior, the City would have taken disciplinary or remedial action.

8

Although the failure to discipline an officer after a violation could not have "caused" that particular violation, it demonstrates that the conduct was pursuant to policy. And the conduct may well have been caused by the city's previous failures to take disciplinary or remedial action against similar conduct. "[A] failure to investigate or reprimand might…cause a future violation by sending a message to officers that such behavior is tolerated." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009); *see also Ortega v. City and Cty. of Denver*, 944 F. Supp. 2d 1033, 1039-40 (D. Colo. 2013) (holding that plaintiff met its burden of demonstrating a custom of excessive force where plaintiff produced evidence of "specific instances in which [the department] ha[d] failed to adequately investigate a citizen complaint of excessive force and the implicated officer was not disciplined"); *Trujillo*, 2017 U.S. Dist. LEXIS 57530, at *10-11.[3] Colorado Springs' failure to discipline officers involved in the previous allegedly unconstitutional conduct sent a clear message to Individual Defendants—it trained them—that such conduct was tolerated and even expected.

A municipality might rebut the assumption that an officer's conduct conformed with municipality practice by disciplining the officer for such conduct. On the other hand, a municipality might approve of and defend such conduct, like Colorado Springs

---

[3] *See also, e.g., Johnson v. City of Roswell*, 2016 U.S. Dist. LEXIS 109994, at *55-56 (D.N.M. Aug. 18, 2016) (Allegations that city "failed to investigate or take disciplinary actions against subordinate officers or provide any avenue of redress for complaining citizens, despite being aware of the pattern of conduct…presumed true, may create the plausible inference of a widespread unlawful custom…Accordingly, Plaintiffs have sufficiently stated a claim for the existence of an actionable municipal custom."); *Hunter v. City of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011) ("[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished").

did as to the Individual Defendants and is still doing as to Defendant Patterson,[4] supporting the inference that the conduct conformed with and was engaged in pursuant to City custom and practice. *See, e.g., Bordanaro v. McLeod*, 871 F.2d 1151, 1166-67 (1st Cir. 1989); *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004). In such case, the jury must be permitted to find the City responsible for its officers' unconstitutional conduct taken pursuant to approved practices.

Moreover, the Individual Defendants will defend themselves in this case by asserting under oath that their use of force was in accordance with the training, policies, and customs of CSPD. Their supervisors can be expected to testify to the same.[5] Such testimony will suffice to maintain Colorado Springs as a municipal defendant. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989); *Moore v. Miller*, 2014 U.S. Dist. LEXIS 72452, at *27 (D. Colo. 2014) ("[I]f Defendant Police Officers testify that they acted in accordance with their training and it is found that they committed constitutional violations, the reasonable inference is that, had the City implemented a different training policy on the use of force, [plaintiff] would not have been subjected to the amount force used in this case."); *Ortega,* 944 F. Supp. 2d at 1039 ("[Officers] both testified that the amount of force that they used in this incident was in accord with how they were trained by Denver. Therefore, a reasonable juror could find that, had Denver implemented a different training policy on the use of force,

---

[4] For unknown reasons, the City is not representing Defendant Archer. If such refusal to defend is based upon any finding of wrongdoing by Archer related to Mr. Melvin's death, the City should say so, as it is relevant to the City's liability.
[5] Notably, nowhere in Defendant's Motion is there an assertion that the Individual Defendants' conduct was *in any way* beyond or in contravention of the official customs, policies, and practices of Colorado Springs.

Plaintiffs would not have been subjected to the amount force used in this case.").

### iii. Subsequent constitutional violations confirm Colorado Springs' unlawful customs.

CSPD's killing of De'Von Bailey, after it killed Mr. Melvin, does not prove that Mr. Bailey's killing somehow caused Mr. Melvin's or alone establishes Colorado Springs' customs. *See* [Doc. 41] at 11. Rather, Mr. Bailey's killing, which occurred less than a year and a half after the killing of Mr. Melvin, provides even further evidence that Colorado Springs has a widespread pattern and practice of using excessive force, particularly against young Black men. *See, e.g.*, *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (explaining that incidents that occurred after an allegedly unconstitutional use of force "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force"); *Foley v. Lowell*, 948 F.2d 10, 14 (1st Cir. 1991) ("[A]ctions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident."). This custom is plausibly pled by the incidents described in the previous sections, as well as the circumstances of Mr. Melvin's own killing, which Plaintiff has alleged involved subjecting Mr. Melvin to "multiple harms" by the Individual Defendants' use of excessive force, occurrence of excessive force "in the open," and "multiple officials'" involvement "in the misconduct." *Arakji*, 2015 U.S. Dist. LEXIS 161600, at *16-17. CSPD's killing of Mr. Bailey, for which Colorado Springs disciplined no officer involved, makes clear that Colorado Springs maintains the same custom and still has not remedied the situation—making it much more likely that others (likely young Black men) will be injured or killed going forward.

Indeed, another incident of excessive force since CSPD killed Mr. Melvin shows

11

that Colorado Springs's customs are as entrenched as ever. In April 2019, three CSPD officers (along with a Teller County Sheriff's Officer) entered a hospital room in which C.J. Andersen, a Marine veteran, was watching over his severely injured young daughter, while his pregnant fiancé rested nearby.[6] After he refused the officers demands to seize his and his fiancé's property without a warrant or any legal justification, the officers brutally attacked Mr. Andersen, slamming him to the ground and tasing him twice. Like Mr. Melvin, Mr. Andersen had committed no crime, nor did the officers have reasonable suspicion that he had or would commit any crime; yet the officers violently and unreasonably arrested Mr. Andersen and repeatedly tased him (though not nearly as many times as the Individual Defendants tased Mr. Melvin when they killed him). This excessive taser use against a person who had committed no crime killed Mr. Melvin, and appears to be customary practice for CSPD officers.

Such pernicious and intractable customs are why claims directed at the City are so vital and why Plaintiff brings the claim. Liability against Colorado Springs would help ensure that individuals like Mr. Melvin are not brutalized and killed in the future.

> The ability to promote an individual official's "scrupulous observance" of the Constitution is important. Perhaps even more important to society, however, is the ability to hold a municipality accountable where official policy or custom has resulted in the deprivation of constitutional rights. A judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, [and] alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.

---

[6] *Available at* https://www.9news.com/article/news/crime/woodland-park-man-tasered-by-law-enforcement-files-suit/73-ae045fea-831a-4418-86ba-0150ff344fbb; *see also Andersen v. Colorado Springs, et al.*, Case No. 1:20-cv-02032-KMT (D. Colo. 2020).

*Manzanares v. Albuquerque*, 628 F.3d 1237, 1242 (10th Cir. 2010) (citation omitted).[7]

### B. Plaintiff has plausibly pled Defendant Colorado Springs' constitutionally inadequate training of its law enforcement officers.

In addition to Defendant Colorado Springs' unequivocal approval of the Individual Defendants' violation of Plaintiff's constitutional rights (and its approval of the other constitutional violations), the officers' use of excessive force in this case reveals an utter failure of training. Colorado Springs' training or lack thereof foreseeably led to the Individual Defendants' unlawful attempt to arrest Mr. Melvin, and their use of excessive force that killed him. [Doc. 30] ¶¶ 38-66. Training on reasonable suspicion, probable cause, and excessive force are the core fundamentals of law enforcement officers who engage with the public. The Individual Defendants' wild, violent, and terrifying force against Mr. Melvin, without probable cause or even reasonable suspicion to believe he had committed a crime, shows either a complete lack of training or woefully inadequate and incorrect training that is virtually certain to result in constitutional violations. In either event, constitutional violations would be "highly predictable" and "plainly obvious" consequences of Colorado Springs' training or complete lack of training in this context, thus establishing deliberate indifference. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

Defendant's motion actually reveals a formal policy of deliberate indifference in the argument that it could not have been required to properly train its officers, because it contends that CSPD and its officers did not know of the multiple previous excessive

---

[7] *See also, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 574-75 (1986); *Gomez v. Guevara*, 2019 U.S. Dist. LEXIS 155120, *13 (N.D. Ill. April 8, 2019) (noting that there is "a profound interest in pursuing…claims with an eye toward institutional reform," and "a judgment naming the city itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer…paid by the city.").

force and false arrest constitutional violations (including three that settled for hundreds of thousands of dollars). *See* [Doc. 41] at 12. But Plaintiff alleged that Colorado Springs had active or constructive knowledge of the alleged pattern of unconstitutional tortious conduct and took no action in response, *see* [Doc. 30] ¶¶ 44-68; such allegations show deliberate indifference. *See, e.g., Hinkle v. Beckham Cty.*, 2020 U.S. App. LEXIS 19309, *69-70 (10th Cir. June 22, 2020); *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). Defendant's ignoring previous constitutional violations or belief that they did not warrant discipline or training, *see* [Doc. 41] at 12-13— even while settling some of the claims for substantial sums—shows deliberate indifference, meaning Colorado Springs did not engage in obviously necessary remedial training that could have averted the Individual Defendants' killing Mr. Melvin.

Plaintiff has adequately alleged "the specific topic of the challenged policy or training inadequacy." *Arakji*, 2015 U.S. Dist. LEXIS 161600, at *16-17. Multiple courts have held that a plaintiff need only plead that the unconstitutional policy exists and that it caused the alleged constitutional violation,[8] reasoning that the usual rule of pleading – that courts are to accept all allegations as true at the motion to dismiss stage – applies, with particular force, in the context of pleading a policy, practice, or custom

---

[8] "[I]nformation concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider, so that pleading facts to sufficiently advance a [municipal liability] claim may be impossible without some assistance through litigation tools such as request for admissions, interrogatories, document requests, and depositions." *Mitchell v. Township of Pemberton*, 2010 U.S. Dist. LEXIS 60038, at *6 (D.N.J. 2010); *see also Wilson v. City of Chicago*, 2009 U.S. Dist. LEXIS 93912, at *8 (N.D.IL. 2009); (*"It is not reasonable to expect a plaintiff to have information about other incidents at the pleading stage; instead, a plaintiff should be given the opportunity to develop an evidentiary record to determine whether he can provide support for his claims."); *accord McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

claim against a municipality. *See, e.g., Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14. Plaintiffs are often unable to access information about municipalities' policies, training, and customs at the pleading stage, before an opportunity for meaningful discovery. *See, e.g., Taylor*, 2011 U.S. Dist. LEXIS 97985, at *4.[9] Plaintiff adequately alleged unconstitutional training, customs, and policies with respect to the use of force that Colorado Springs has repeatedly condoned and ratified, which caused Mr. Melvin's death, [Doc. 30] ¶¶ 38-66, and the claim of municipal liability should be allowed to proceed to discovery. *See, e.g., Myers*, 151 F.3d at 1316.

### C. **Plaintiff's Amended Complaint contains no Equal Protection Claims.**

Colorado Springs argues that Plaintiff's Equal Protection Clause claims should be dismissed. *See* [Doc. 41] at 4-8. However, the Amended Complaint does not have an Equal Protection claim. *See generally* [Doc. 30]. Defendant's arguments to dismiss claims that do not exist in the operative complaint are irrelevant.

### IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss [Doc. 41].[10]

DATED this 4th day of August 2020.

---

[9] *See also Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1240-41 (N.D. Okla. 2012) (holding that pleading *Monell* liability "required more than 'boilerplate allegations' of a municipal policy, but did not 'deman[d] specific facts that prove the existence of a policy' when a plaintiff would not have access to such information before discovery").
[10] If this Court grants the motion, a dismissal at this stage should be without prejudice, allowing Plaintiff to amend to add the claim once discovery provides Plaintiff access, for the first time, to details of Defendant Colorado Springs' policies and training as relate to the Individual Defendant's killing Mr. Melvin. *See, e.g., Surat v. Klamser*, 2020 U.S. Dist. LEXIS 30844, at *20-22 (D. Colo. Feb. 24, 2020).

        *s/ Darold W. Killmer*
        Darold W. Killmer
        Liana Orshan
        Reid R. Allison
        KILLMER, LANE & NEWMAN, LLP
        1543 Champa Street, Suite 400
        Denver, Colorado 80202
        303-571-1000
        303-571-1001 – fax
        dkillmer@kln-law.com
        lorshan@kln-law.com
        rallison@kln-law.com

        A. Tyrone Glover
        STIMSON STANCIL LABRANCHE HUBBARD, LLC
        1652 N. Downing Street
        Denver, CO 80218
        (720) 689-8909
        glover@sslhlaw.com

        *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on this 4th day of August 2020 I filed this **RESPONSE TO COLORADO SPRINGS' MOTION TO DISMISS AMENDED COMPLAINT [ECF #41]** via CM/ECF, which will generate a Notice of Electronic Filing to the following:

Anne Turner
Assistant City Attorney
City of Colorado Springs
30 S. Nevada Ave., Suite 501
Colorado Springs CO 80903
Anne.Turner@coloradosprings.gov

        *s/ Charlotte Bocquin Scull*
        Paralegal