IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20–cv–00991–CMA–KMT

ESTATE OF JEFFREY MELVIN, by and through its personal representative Jeffrey Melvin Sr.,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO,
DANIEL PATTERSON, in his individual capacity, and
JOSHUA ARCHER, in his individual capacity,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendants' "Motion to Dismiss Amended Complaint" (Doc. No. 41 [Mot.], filed July 7, 2020), to which Plaintiff filed a response (Doc. No. 48 [Resp.], filed August 4, 2020) and Defendants filed their reply (Doc. No. 52 [Reply], filed August 18, 2020).

## STATEMENT OF THE CASE

Plaintiff filed its Amended Complaint and Jury Demand on July 1, 2020. (Compl.) Plaintiff alleges on April 26, 2018, Colorado Springs Police Department ("CSPD") Officers Daniel Patterson and Joshua Archer were dispatched at 12:31 A.M. to an apartment on a report of a disturbance. (Compl., ¶ 14.) A resident told them he had heard a fight in Unit 211. (*Id.*, ¶ 15.) The occupant of Unit 211 confirmed "that an altercation had occurred earlier between him

and a friend, but the situation was under control and that his friend had since left." (*Id.*, ¶ 16.) The Officers checked for warrants on the individuals in the apartment and searched the unit for evidence of crime, which they allegedly did not find. (*Id.*, ¶¶ 17–18.) "During their investigation, the occupants of the unit treated the officers with respect, answered every question asked of them, and [allegedly] never gave the officers reason to fear for their safety or believe criminal activity was occurring in the unit." (*Id.*, ¶ 17.)

Approximately eighteen minutes after the police arrived at the apartment, Jeffrey Melvin ("Melvin"), "a young African American man," arrived. (*Id.*, ¶¶ 1, 18.) Melvin "hastily entered [the] unit and closed the door behind him," separating Officer Patterson, who was outside in the hallway, from Officer Archer, "who unbeknownst to Mr. Melvin was inside of the apartment." (*Id.*, ¶¶ 19–20.) Officer Archer "ordered Mr. Melvin away from the door, and Mr. Melvin immediately complied." (*Id.*) The door was opened, and Officer Patterson entered. (*Id.*) "Officer Archer began aggressively yelling at and grabbing Mr. Melvin in the small entryway." (*Id.*, ¶ 21.) The Officers were "attempting to handcuff [Melvin]." (*Id.*) Melvin "did not immediately submit" to the Officers. (*Id.*, ¶ 23.) Instead, Melvin "tried to move away from them." (*Id.*, ¶ 24.) A struggle ensued, with the Officers allegedly "grabbing Mr. Melvin, choking him, and throwing him to the ground," and Melvin "trying to leave the second-story apartment through a nearby window." (*Id.*, ¶¶ 25–26.) Approximately two minutes into the melee, Officer Archer deployed his Taser on Melvin, ultimately pulling the trigger five times over a period of more than a minute. (*Id.*, ¶¶ 27–30.) Officer Patterson allegedly sprayed pepper spray in Melvin's face "[a]t some point." (*Id.*, ¶ 31.) Melvin "beg[ged] for help from those around him" and "scream[ed] that the officers were 'going to kill him.'" (*Id.*, ¶¶ 28, 32.) Melvin

2

"went for the door to the apartment." (*Id.*, ¶ 33.) Officer Patterson fired his Taser at Melvin, the first cartridge missed but the second one connected "with his upper torso." (*Id.*) Melvin fell to the ground, then "stood up, ripped the metal Taser prongs from his skin," and "ran" from the apartment. (*Id.*, ¶¶ 33–34.) Officers caught up to Melvin "across the street" and handcuffed him. (*Id.*, ¶ 34.) Melvin ultimately was charged with "resisting arrest and interference with a public official." (*Id.*, ¶ 40.)

"Melvin began slurring his words, clearly needing medical attention." (*Id.*, ¶ 34.) Paramedics took Melvin to the hospital. (*Id.*, ¶ 35.) Doctors put him "in a medically induced coma," but he died six days later. (*Id.*, ¶ 35.)

Plaintiff, Melvin's estate, sues the defendants in their individual capacities, asserting one claim for "4th & 14th Amendment Excessive Force Resulting in Death" pursuant to 42 U.S.C. § 1983. (*Id.* at 1, 15.) Plaintiff seeks compensatory damages, punitive damages, and equitable relief. (*Id.* at 18.)

Defendants the City of Colorado Springs and Daniel Patterson move to dismiss the claims against them in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads

4

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### A.  *Equal Protection Claim*

Plaintiff's original Complaint explicitly asserted an equal protection claim against all Defendants. (Doc. No. 1 at 18–21.)  In the Amended Complaint, Plaintiff struck the explicit equal protection claim (*see* Doc. No. 31–1 at 18–21) but did not strike the allegations supporting it (*see id.* ¶¶ 1, 4, 23, 38–66, 77).  Because Plaintiff's Amended Complaint still contains allegations of racial discrimination, Defendants contend it can be construed as asserting equal protection claims against them.  (Mot. at 2 n.2.)  In its response, Plaintiff clarifies that "the Amended Complaint does not have an Equal Protection claim."  (Resp. at 15.)

Accordingly, the motion to dismiss an equal protection claim should be denied as moot.

### B.  *Municipal Liability*

Plaintiff asserts that the City of Colorado Springs has a custom of "making arrests without probable cause," using excessive force, and "racially biased policing." (Compl., ¶¶ 4, 44, 53.)  Plaintiff bases its municipal liability claim on allegations of (1) an informal custom amounting to a widespread practice and (2) a failure to train, supervise and discipline employees.  (*See id.*, ¶¶ 38–66.)

A municipality can be directly sued under § 1983 when its officers commit constitutional violations in accordance with the municipality's official policy.  *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  To state a claim for municipal liability under § 1983 for the actions of a

5

municipal employee, a party must allege sufficient facts to demonstrate that it is plausible "(1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). To demonstrate "moving force," there must be "a 'direct causal link between the action and the deprivation of federal rights.'" *Ireland v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1226 (D. Colo. 2002) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999)). "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). The plaintiff must show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 769. "The deliberate indifference standard may be satisfied when the [entity] has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted).

A municipal policy or custom can be in the form of: "(1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers'

6

review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

### 1.     *Informal Custom Amounting to a Widespread Practice*

Upon a review of the Amended Complaint, the court agrees with Defendants that Plaintiff has failed to properly allege a policy or a custom as the moving force behind its alleged constitutional violations and fails to allege a causal link between any such policy or custom and the alleged violations. Plaintiff supports its contention that the City of Colorado Springs has a custom of "making arrests without probable cause," using excessive force, and "racially biased policing" (Compl., ¶¶ 4, 44, 53) by alleging that six lawsuits based on events occurring between 2009 and 2015 show that the City had the alleged customs on April 26, 2018 (*id.*, ¶¶ 44–51).

The court declines to accept these entirely conclusory allegations as true for the present purposes. Plaintiff fails to show that the incidents underlying these lawsuits were the same or substantially similar to its alleged constitutional injury. "Listing lawsuits and cases filed against predecessor organizations . . . over the years does not constitute evidence [of] an official policy or custom." *Baltierra v. Adams Cnty.*, 18–CV–00664–CMA–MEH, 2019 WL 1331914, at *7 (D. Colo. Mar. 25, 2019).[1] Such conclusory allegations fail to demonstrate that there was some

---

[1] Plaintiff's counsel has been advised repeatedly that this method is unavailing. *See Metzler v. City of Colorado Springs*, No. 19-cv-00878-RM-KMT, 2020 WL 533735 (D. Colo. Feb. 3, 2020); *Harris v. City and Cnty. of Denver*, No. 19-cv-00572-MEH, 2019 WL 6876870 (D. Colo. Dec. 17, 2019); *Weitzman v. City and County of Denver*, No. 17-cv-02703-KLM, 2019 WL 1438072 (D. Colo. Mar. 31, 2019); *Estate of Lillis v. Correct Care Solutions, LLC*, No. 16-cv-03038-KLM, 2018 WL 1569752 (D. Colo. Mar. 30, 2018); *Estate of Lobato v. Correct Care Solutions, LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295 (D. Colo. Mar. 30, 2017).

unwritten policy or custom that was so permanent and well-settled as to constitute a "custom or usage" with the force of law.  *Monell*, 436 U.S. at 691.

### 2. *Failure to Train, Supervise, or Discipline*

Plaintiff alleges that the City fails to "train, supervise, and/or discipline its employees" regarding "probable cause and reasonable suspicion requirements," "constitutional limits on use of force and how to avoid engaging in racially biased or disproportionately aggressive policing." (Compl., ¶¶ 51, 77.)  However, Plaintiff "'do[es] not allege specific facts about who, what, where, and when that establish a plausible claim.' "  *Rehberg v. City of Pueblo*, No. 10–CV–00261–LTB–KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (citation omitted).

Plaintiff further alleges that the City "actually *trains*" its officers by its "approval and defense of the use of excessive force by CSPD employees … against people of color" and its "failure to counsel or discipline."  (Compl., ¶¶ 62–63 [emphasis in original].)  The complaint references three instances of alleged uses of excessive force predating Melvin's arrest; however, only two of those instances involved African Americans.  (*See id.*, ¶¶ 45–47.)  Moreover, these instances are included in Plaintiff's summary of six lawsuits in which the court declines to accept the entirely conclusory allegations.

Plaintiff's municipal liability claims against the City of Colorado Springs should be dismissed.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the ""Motion to Dismiss Amended Complaint" (Doc. No. 41) be **GRANTED in part** and **DENIED in part**.  The motion to dismiss an equal protection claim should be denied as moot.  The motion to dismiss the claims against Defendant City of Colorado

8

Springs should be granted, and the claims against Defendant City of Colorado Springs should be dismissed with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation de novo despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate

judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

Dated this 22nd day of February, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge