# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No:  20-cv-00991-CMA-MDB

ESTATE OF JEFFREY MELVIN,

Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO;
DANIEL PATTERSON, in his individual capacity; and
JOSHUA ARCHER, in his individual capacity,

Defendants.

**DEFENDANTS' REBUTTAL EXPERT DISCLOSURES
PURSUANT TO FED. R. CIV. P. 26(a)(2)**

Defendants City of Colorado Springs, Daniel Patterson, and Joshua Archer make the following rebuttal expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2).

**A.     RETAINED EXPERTS**

1. **Ronald M. Goldenberg, M.D.**
   The Forensic Panel
   515 N. Flagler Drive, Suite P-300
   West Palm Beach, FL  33401

2. **William R. Oliver, M.D.**
   The Forensic Panel
   515 N. Flagler Drive, Suite P-300
   West Palm Beach, FL  33401

1

Drs. Goldenberg's and Oliver's rebuttal expert report is attached as Exhibit 1.[1] See Defendants' Expert Disclosures served August 15, 2022 for the doctors' qualifications, publication lists, testimony history, and compensation schedule.

3. **Sara J. Schreiber, M.S.**
   The Forensic Panel
   515 N. Flagler Drive, Suite P-300
   West Palm Beach, FL  33401

4. **Kimberly Ann Collins, M.D.**
   The Forensic Panel
   224 West 30th Street, Suite 806
   New York, NY  10001

5. **Lionel Raymon, Pharm. D., Ph.D.**
   The Forensic Panel
   224 West 30th Street, Suite 806
   New York, NY  10001

6. **Michael Welner, M.D.**
   The Forensic Panel
   515 N. Flagler Drive, Suite P-300
   West Palm Beach, FL  33401

Drs. Schreiber, Collins, Raymon, and Welner peer reviewed the rebuttal expert report of Drs. Goldenberg and Oliver. Drs. Collins, Raymon, and Welner are not expected to testify in this case. Defendants disclose Drs. Schreiber, Collins, Raymon, and Welner as peer reviewers out of an abundance of caution. See Defendants' Expert Disclosures served August 15, 2022 and Defendants' First Supplemental Expert Disclosures served September 1, 2022 for the doctors' qualifications, publications lists, testimony history, and compensation schedule.

---

[1] The Exhibits hereto will be uploaded to ShareFile.

7. **Jonathan Ducey**
   Matson Driscoll & Damico LLP
   Forensic Accountants
   Denver Corporate Center III
   7900 E. Union Avenue, Suite 1100
   Denver, CO  80237

Mr. Ducey's rebuttal expert report, curriculum vitae, and publication and testimony lists are attached hereto as Exhibit 2. Mr. Ducey is being compensated at the rate of $340 per hour for his work on the case.

8. **Robin S. Engel, Ph.D.**
   Senior Vice President
   National Policing Institute
   2550 S Clark Street, Suite 1130
   Arlington, VA  22202

9. **Jennifer Marie-Calnon Cherkauskas, Ph.D.**
   Senior Research Associate
   National Policing Institute
   2550 S Clark Street, Suite 1130
   Arlington, VA  22202

Drs. Engel and Cherkauskas co-authored the rebuttal expert report attached at Exhibit 3. Drs. Engel and Cherkauskas also were among the authors of the Transparency Matters report submitted to the Colorado Springs Police Department dated April 25, 2022, and Defendants disclose the Transparency Matters report as a rebuttal report in Exhibit 3 as well. Their qualifications, including publications lists, and Dr. Engel's compensation schedule are submitted with Exhibit 3. Neither Dr. Engel nor Dr. Cherkauskas have testified in the last four years. Dr. Cherkauskas is being compensated at a flat rate of $10,000 for the rebuttal report and is not expected to testify in this case.

**B.     NON-RETAINED EXPERTS**

1.     **Emily Russell, M.D.**
Forensic Pathologist
Deputy Chief Medical Examiner
El Paso County Coroner's Office
2741 E. Las Vegas Street
Colorado Springs, CO 80906

Dr. Russell is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 on manner of death classifications and, more specifically, the homicide manner of death classification. A summary of the facts and opinions to which Dr. Russell is expected to testify is attached as Exhibit 4.

Dated this 17th day of October, 2022.

OFFICE OF THE CITY ATTORNEY OF THE
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney


*/s/ Anne H. Turner*
Anne H. Turner, Assistant City Attorney
Martha E. McKinney, Senior Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535
anne.turner@coloradosprings.gov
martha.mckinney@coloradosprings.gov

Attorneys for Defendants

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on the 17th day of October, 2022, I served the foregoing on the following parties via e-mail, addressed as follows:

Darold W. Killmer (dkillmer@kln-law.com)
Liana G. Orshan (lorshan@kln-law.com)
Reid R. Allison (rallison@kln-law.com)
*Attorneys for Plaintiff*

                                                                */s/Terry JoHansen*
                                                                Terry JoHansen
                                                                Paralegal



# EL PASO COUNTY

## OFFICE OF THE CORONER

LEON KELLY, MD
COUNTY CORONER • MEDICAL EXAMINER

September 21, 2022

To Whom It May Concern:

### I.     Introduction

I am the Deputy Chief Medical Examiner for El Paso County, Colorado and have been employed by the El Paso County Coroner's Office since 2012. I am a medical doctor, a board-certified Forensic Pathologist, and a board-certified Anatomic Pathologist. As part of my duties, I conduct forensic autopsies and death investigations. Those investigations include documenting the body of the deceased, determining the cause of death, and assigning a manner of death. Coroners/Medical Examiners are the "certifiers of death" responsible for completing the official death certificate. Death certificates include information about both the cause and manner of a person's death.

The National Association of Medical Examiners (NAME) is a national professional organization for individuals involved in death investigations. NAME provides resources and information for those working in this field, and it offers a voluntary inspection and accreditation program for death investigation offices. The El Paso County Coroner's Office has been continually certified by NAME since the 1980's. In addition, NAME provides resources and guidelines for death investigations.

**EXHIBIT 4**

2741 EAST LAS VEGAS STREET         COLORADO SPRINGS, CO 80906-1523
OFFICE: (719) 390-2450              FAX: (719) 390-2462

## II.     Manner of Death Classification

One such resource is the NAME publication "A Guide For Manner of Death Classification." ("NAME Guide") (see attachment A). Manner of death classification provides information "on the circumstances surrounding a particular cause of death and how that cause came into play."[1] These classifications originally were developed to ensure vital records registrars received accurate information and provide consistency across jurisdictions.

> Manner of death is an American invention. A place to classify manner of death was added to the US Standard Certificate of Death in 1910. Manner of death is not addressed directly in the International Classification of Diseases as promulgated by the World Health Organization. It was added to the death certificate by public health officials to assist in clarifying the circumstances of death and how an injury was sustained—not as a legally binding opinion—and with a major goal of assisting nosologists who code and classify cause-of-death information from death certificates for statistical purposes.[2]

In Colorado, as in most states, there are five manner of death classifications: Natural, Accident, Suicide, Homicide and Undetermined.[3] Manner of death classification is determined on a case-by-case basis and is unique to the set of circumstances encountered in each death investigation. Manner of death classification has generated considerable debate. "All agree, however, on the fundamental premise that manner of death is circumstance-dependent, not autopsy dependent."[4] The NAME guidelines seek "to foster a consistent approach amongst certifiers."[5] The NAME Guide provides both general principles and recommendations for specific types of cases/scenarios.[6]

---

[1] Hanzlick, R., Hunsaker, J., and Davis, G., **A Guide For Manner of Death Classification**, National Association of Medical Examiners, (2002) at p. 3.
[2] *Id.*
[3] *Id.*
[4] *Id.* at p. 4.
[5] *Id.* at p. 2.
[6] *Id.* at p. 5-18.

### III. <u>Homicide Manner of Death</u>

#### A. Volitional Acts to Cause Fear, Harm or Death

Homicide manner of death classifications can be controversial and easily misunderstood. According to NAME, "[h]omicide occurs when death results from a volitional act committed by another person to cause fear, harm, or death."[7] Intent to cause the death is sometimes present but is not required for a manner of death to be classified as a homicide.[8] "[T]he classification of Homicide for the purpose of death certifications is a 'neutral' term and *neither* indicates nor implies criminal intent, which remains a determination within the province of legal processes."[9] The homicide manner of death classification is not synonymous with murder or the intentional and unlawful killing of another.

Examples of volitional acts that result in homicide manner of death classifications help illustrate this difference. The circumstances will often involve a physical adversarial struggle by two individuals resulting in the death of one of the participants during that physical struggle. These situations are often classified as homicides for purposes of manner of death certification dependent on the attendant circumstances. The volitional act is the participation in the physical altercation regardless of the level of force used against the decedent. Claims of self-defense, other legal justifications and/or medical condition/history of the decedent do not affect the classification. Two such homicide manner of death examples are outlined below:

1. An individual is being sexually assaulted at gunpoint. There is a physical struggle where the "victim" wrestles the firearm away from the assailant and fires a single shot killing the assailant. In this scenario, the "victim" committed the volitional act of

---

[7] *Id.* at p. 6.
[8] *Id.*
[9] *Id.*

3

struggling to get the firearm and firing one round to cause harm to the assailant to stop the assault. This would properly be classified as a homicide manner of death.

2. A homeowner encounters a masked individual in their home with several of their household items. There is a physical struggle between the homeowner and the alleged burglar. The burglar collapses from a cardiac event that occurs during the relatively minor physical struggle and is declared dead at the scene. The homeowner committed the volitional act of struggling with the alleged burglar to defend his/her home and belongings. But for the physical struggle, it is unlikely that the cardiac event would have occurred at that moment. This would properly be classified as a homicide manner of death.

Further, homicide classifications are not limited to volitional acts to cause harm or death but also include actions undertaken with intent to cause fear or fright "induced by verbal assault, threats of physical harm, or through acts of aggression intended to instill fear or fright."[10] These incidents "may be classified as a homicide if there is a close temporal relationship between the incident and death."[11] The NAME Guide provides the following fear-based examples of appropriate homicide manner of death classifications.

> Examples include someone who has an acute cardiac death while being verbally assaulted; someone who dies in an auto crash while being chased by another to instill fear or panic; and someone who dies suddenly immediately after being bitten…. In general, the time interval to establish the causal relationship between "minor injury" and collapse followed by death or those involving acute cardiac deaths following fright must be very short—during the stress inducing episode or immediate emotional response period—a few minutes or less.[12]

---

[10] *Id.* at p. 13.
[11] *Id.*
[12] *Id.*

### B. "In Custody" Deaths

"In custody" deaths involving law enforcement receive increased scrutiny by death investigators. NAME commissioned the Ad Hoc Death In Custody Committee Position Paper ("NAME In Custody Death Paper") in 2017.[13] (See attachment B). This paper outlines the specific definitions and enhanced procedures and reporting that are recommended for deaths involving law enforcement.[14] The paper references the media attention and strong public interest regarding deaths that occur when law enforcement is present and the desire for a consistent approach among death investigators. In addition, enhanced procedures and reporting of in custody deaths provides increased transparency to the public and demonstration of the independence of the death investigator.

For purposes of classifying manner of death, NAME expands on the common understanding of the term "in custody" to include any law enforcement involvement with a decedent, even without physical contact. According to NAME, in custody deaths involve "the decedent in either direct or indirect contact with law enforcement such as incarceration, apprehension, and pursuit."[15] This category includes "deaths resulting from law enforcement engaging in physical contact with the decedent in an attempt to restrain or subdue the individual while making an arrest."[16] However, also included in this category are deaths where no direct physical contact is made between law enforcement and the decedent, including vehicle pursuit-related deaths and the suicide of a barricaded subject.[17]

---

[13] Mitchel R, et al., **National Association of Medical Examiners Position Paper: Recommendations for the Definition, Investigation, Postmortem Examination, and Reporting of Deaths in Custody.** Acad. Forensic Pathol. 2017 7(4): 604-618.
[14] *Id.*
[15] *Id.* at p. 606.
[16] *Id.*
[17] *Id.*

All five manner of death classifications are available to the death investigator for in custody deaths, however, NAME recommends any death that involves any level of law enforcement restraint be classified as a homicide regardless of the underlying medical conditions, mental illness, or level of alcohol/drug intoxication of the decedent.[18] NAME reasons "there is some value to the homicide classification toward reducing the public perception that a 'cover up' is being perpetrated by the death investigation agency."[19]

## V.   Conclusion

Manner of death classification is unique to forensic pathology and death investigations. The five available manners of death have specific meanings within this field and do not always correspond with the terms' meanings in other contexts. The selection of manner of death classification is informed by the recommendations of NAME as outlined in their publications. Law enforcement involved deaths receive increased scrutiny, and a goal of increased public transparency can influence the manner of death classification. A homicide manner of death classification does not mean and should not be read to indicate criminal intent or any legal responsibility.

Respectfully,

Emily Russell, M.D.
Deputy Chief Medical Examiner / Forensic Pathologist

---

[18] Hanzlick R., Hunsaker J., and Davis, G., **A Guide For Manner of Death Classification**, National Association of Medical Examiners, (2002) at p. 11; Mitchel R, et al., **National Association of Medical Examiners Position Paper: Recommendations for the Definition, Investigation, Postmortem Examination, and Reporting of Deaths in Custody.** Acad. Forensic Pathol. 2017 7(4): 604-618, 614.

[19] Hanzlick R., Hunsaker J., and Davis, G., **A Guide For Manner of Death Classification**, National Association of Medical Examiners, (2002) at p. 11.