IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 20-cv-00991-CMA-MDB

ESTATE OF JEFFREY MELVIN,

Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO;

Defendant.

## DEFENDANT'S MOTION IN LIMINE

Defendant City of Colorado Springs ("City") moves to exclude certain evidence.

**Conferral Certification:** Undersigned counsel has conferred in good faith with Plaintiff's counsel concerning this motion. Plaintiff's counsel opposes the relief requested.

## ARGUMENT

**1.  Lawfulness of Detention**

Plaintiff seeks to introduce evidence related to the authority of the Officers to detain Mr. Melvin. For example, Plaintiff's police procedures expert, Geoffrey Alpert, opined in his report that "the officers had no probable cause to believe [Mr. Melvin] had committed or was going to commit any other crime." (Alpert Rpt. at 8) Similarly, Plaintiff argued in response to Defendants' motion for summary judgment that the Officers "did not have probable cause to believe Melvin committed [any] offense, and therefore they had no justification to use any force to detain Melvin." (Doc. 144 at 17-18)

Defendant objects to the introduction of evidence challenging the Officers' authority to detain Mr. Melvin based on Federal Rules of Evidence 401 and 403. On an excessive force claim, the lawfulness of the arrest "is not before [the Court];" the arrest is assumed to be lawful. *Andersen v. Delcore*, 79 F.4th 1153, 1162 n.4 (10th Cir. 2023). At least at one point, Plaintiff appeared to agree. (Doc. 144 at 2 (arguing "that lack of probable cause is not an element of an excessive force claim")).

Evidence and argument that the Officers lacked probable cause or reasonable suspicion to detain Mr. Melvin would confuse the issues and mislead the jury. The jury easily would think that they may find for Plaintiff if they believe the Officers lacked authority to detain Mr. Melvin, when such a finding would be contrary to law.

Plaintiff should be precluded from arguing or introducing evidence on the Officers' authority to detain Mr. Melvin or suggesting that they lacked authority to use *any* force on him. The issue is not *whether* the Officers could use any force on Mr. Melvin; it is whether "the officers used *greater* force than would have been reasonably necessary to effect" Mr. Melvin's arrest. *Id* (emphasis added).

## 2. Force Disproportionate to Risk from Flight

Plaintiff seeks to introduce evidence supporting the notion that the Officers "used a disproportionate amount of force compared to the potential harm of Mr. Melvin fleeing the scene." (Alpert Rpt. at 9 ¶ 17; *see also id.* ¶ 14.f. ("There was no serious consequence to the public if Mr. Melvin were to leave."); Vasquez Depo. at 84 (Q: [W]hat would have been the harm of allowing [Mr. Melvin] to get away?"))

Defendant objects to the introduction of the evidence pursuant to Federal Rule of Evidence 401, 403 and 702. Excessive force is not determined by comparing the force

2

used against the risk of harm by the flight of the subject. It is determined by comparing the force used to the force reasonably necessary to complete the arrest. *See Anderson*, 79 F.4th at 1162 n.4; *Youbyoung Park v. Gaitan*, 680 Fed. App'x 724, 739 (10th Cir. 2017) ("officers may employ the amount of force necessary to complete the arrest").

The opinion from Mr. Alpert that "[t]here was no serious consequence to the public if Mr. Melvin were to leave" and the like is pure speculation and should be barred pursuant to F.R.E. 702. Indeed, if allowed to leave, Mr. Melvin could have further abused his girlfriend, whom he put in the hospital just a couple months earlier. The risk of harm from Melvin's flight from the Officers would cause the jury to speculate as to something that is unknowable. It would invite the jury to assess the reasonableness of the Officers' use of force pursuant to an improper standard. Any evidence concerning the risk of harm from Melvin's flight should be excluded.

### 3. Misleading and Inflammatory Terms

Plaintiff seeks to introduce, through witnesses, exhibits, and/or counsel's arguments, inflammatory terms which are designed to mislead the jury or incite their passions. In the amended complaint, other legal filings, and throughout discovery, Plaintiff repeatedly used terms such as "homicide" and "killed," to describe the Officers' actions. (*See* Doc. 30, Am. Compl. at 2 ¶ 2, 7 ¶ 37, 12 ¶ 52; Doc. 165, Pl.'s Resp. to Mot. for Summary Judgment at 1, 5, 11) In addition, Plaintiff seeks to introduce evidence of the "homicide, manner of death" determination made by El Paso County Coroner, Dr. Emily Russell-Kinsely.

"The Court is permitted to limit the use of legal terminology that may confuse or mislead the jury." *Silva v. Chung*, No. CV 15-00436 HG-KJM, 2020 WL 515810, at *14

(D. Haw. Jan. 31, 2020), *aff'd,* 851 F. App'x 697 (9th Cir. 2021). *See also Crawford v. City of Bakersfield*, No. 1:14-CV-01735-SAB, 2016 WL 5870209, at *8 (E.D. Cal. Oct. 6, 2016) (granting defendants' motion in limine to exclude terms such as "murder," "homicide" and "killed" as it relates to the manner of decedent's death). "Homicide has both a legal and a scientific explanation," and the Court should preclude "use of the term so as not to confuse or manipulate the jury due to common perceptions that the word 'homicide' is equivalent to 'murder.'" *Silva*, 2020 WL 515810, at *14. "[T]he manner of death does not require the use of the terms murder or homicide." *Crawford*, 2016 WL 5870209, at *8.

The use of terms such as "homicide" and "killed" at trial would be argumentative, misleading, and only serve to inflame the passions of the jury. Fed. R. Evid. 403. The terms are particularly misleading here, considering that Mr. Melvin died not from a gunshot wound at the scene but rather six days after being tased. The cause of Mr. Melvin's death is hotly disputed. Dr. Russell-Kinsely may testify as to her opinion on Mr. Melvin's cause of death, but she need not use "homicide" to describe it. Any relevant purpose of "homicide" is substantially outweighed by its prejudicial effect. Defendant asks the Court to prohibit Plaintiff's counsel arguments, witness testimony, and exhibits from being introduced using or containing the words "homicide," "murder," "killed," "tased to death," or similarly inflammatory language.

**4.      Cards, Letters and Photos Disclosed May 24, 2024**

One-and-a-half years after the fact discovery cutoff (*see* Doc. 135) and less than two months before trial, Plaintiff served Defendant with a Seventh Supplemental Disclosure consisting of cards and letters written by and photos of Mr. Melvin. In all the years of litigation, Plaintiff had disclosed nothing of the kind. Plaintiff intends to introduce

4

some of the cards, letters, and photos at trial.

Plaintiff should be barred from introducing the information disclosed on May 24, 2024, pursuant to Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) states that "[i]f a party fails to provide information … as required by Rule 26(a) …, the party is not allowed to use that information … to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Plaintiff's failure to disclose is neither substantially justified nor harmless.

Plaintiff's explanation for the tardy disclosure is that they "got them from a witness (Ms. Johnston)." But Plaintiff hasn't explained why Plaintiff could not have acquired the information in time to disclose during discovery.

Plaintiff's failure to disclose also is harm<u>ful</u>. Plaintiff seeks hedonic damages, which "attempt to compensate for the loss of the pleasure of being alive." DAMAGES, Black's Law Dictionary (11th ed. 2019). Defendant deposed Jeffrey Melvin Sr. and certainly would have questioned him on the cards, letters, and photos, had they been timely disclosed. Defendant may have chosen to depose other family members as well. Furthermore, Defendant's damages expert, Mr. Jon Ducey, examined evidence concerning Mr. Melvin's enjoyment of being alive. Mr. Ducey certainly would have considered the information when forming his opinions. Because Plaintiff disclosed no such cards, letters, and photos during discovery, the introduction of the information now would prejudice Defendant unfairly. Its introduction at trial would suggest Mr. Ducey is biased (for purportedly turning a blind eye to the information) and sloppy (for overlooking it), when neither is deserved. The information Plaintiff disclosed in its Seventh Supplemental Disclosure is unfairly prejudicial and should be excluded.

### 5.     Deadly Force Investigations ("DFIT")

In 2018, when a CSPD officer used "deadly force," CSPD policy required an investigation by the El Paso County Sheriff's Office (EPSO). Plaintiff seeks to introduce evidence concerning such DFIT investigations to suggest that one was required here but not conducted, and that, in any event, an EPSO investigation would just "rubber stamp" the CSPD Officers' conduct. But no one—Plaintiff's police procedures expert included—regards a Taser as "deadly force." Just because Mr. Melvin died six days after the incident does not turn a Taser into deadly force. That's the proverbial tail wagging the dog. The Officers' Taser use did not trigger the DFIT policy because there is no evidence that a Taser is "deadly force." Testimony and evidence concerning DFIT should be excluded pursuant to Fed. R. Evid. 401 and 403.

### 6.     Transparency Matters Report

Plaintiff intends to introduce an April 25, 2022 report by Transparency Matters ("TM") titled "Assessment of Colorado Springs Police Department Use of Force." It is a 300+-page report analyzing CSPD use of force data for a four-year period: from January 1, 2017 through December 31, 2020. (TM Rpt. at iii) The TM Report pools four years of data and looks for trends in CSPD officers' uses of force, including racial/ethnic disparities. CSPD commissioned the report voluntarily, as a proactive, independent systematic review, to identify opportunities to reduce the frequency and severity of force incidents, racial/ethnic disparities in force, and injuries to officers and citizens. (*Id.* at i)

When ruling on Defendants' motions for summary judgment, the Court invited this motion in limine, stating as follows:

> The parties also dispute several facts relating to racially disparate use of force. Plaintiff asserts that "racially disparate use of force is not a separate

6

> claim, but rather evidence of Defendant's inadequate training and deliberate indifference." (Doc. # 165 at 2.) Defendants contend that such evidence is irrelevant to the excessive force claim and unfairly prejudicial because Plaintiff dropped its equal protection claim. (Doc. # 174 at 8–10.) The Court finds it unnecessary to address these arguments to resolve the instant summary judgment motion. If Plaintiff seeks to introduce evidence of racially disparate use of force, or if the City seeks to exclude such evidence, the parties may raise their arguments in a motion *in limine* or at trial.

(Doc. 182 at 33 n.8)

The TM Report should be excluded pursuant to Fed. R. Evid. 401 and 403. To begin, it is irrelevant to Plaintiff's sole remaining claim: a single-incident failure to train claim against the City. (*See* Doc. 209) At issue is whether CSPD adequately trained Officers Patterson and Archer in the use of force in advance of their April 26, 2018 arrest of Mr. Melvin. But the TM Report pools and analyzes data based on CSPD use of force incidents occurring for two-and-a-half years <u>after</u> April 26, 2018. It is unknowable whether the incidents supporting the TM Report's conclusions predate or post-date April 26, 2018. To the extent they post-date the incident, they cannot demonstrate that the City failed to train <u>these</u> Officers. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("basic princip[les] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation" (emphasis in original)). Introduction of the TM Report would allow the jury to rely on evidence that is incompetent to prove that these Officers were not adequately trained.

In addition, the TM Report was not published to the City until four years <u>after</u> Mr. Melvin's arrest. Thus, it also fails to support the notion that the CSPD policymaker was deliberately indifferent to the need for different or additional use of force training of these Officers back in 2016 and 2017.

Plaintiff has not asserted a racial discrimination claim. The TM Report adds more

than mere "context" to Plaintiff's excessive force claim (Doc. 206 at 13); it injects racial discrimination into the case in a way that unfairly prejudices the City. In addition to the above, it is a long, dense report not prepared for this litigation, and it will take Defendant a tremendous amount of trial time to demonstrate its irrelevance and to attempt to undo the unfair prejudice from Plaintiff's use of it. The TM Report should be excluded.

Dated this 12th day of June, 2024

        OFFICE OF THE CITY ATTORNEY OF THE
        CITY OF COLORADO SPRINGS, COLORADO
        Wynetta P. Massey, City Attorney

        */s/ Anne H. Turner*
        Anne H. Turner, Assistant City Attorney
        Martha E. McKinney, Senior Attorney
        30 S. Nevada Ave., Suite 501
        Colorado Springs, Colorado 80903
        Telephone: (719) 385-5909
        Facsimile: (719) 385-5535
        anne.turner@coloradosprings.gov
        martha.mckinney@coloradosprings.gov

        Attorneys for Defendant

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 12th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

dkillmer@killmerlane.com
lorshan@ killmerlane.com
rallison@ killmerlane.com

*Attorneys for Plaintiff*

        */s/ Terry JoHansen*
        Paralegal