**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 20-cv-00991-CMA-MDB

ESTATE OF JEFFREY MELVIN, by and through its personal representative Jeffrey
Melvin Sr.,

      Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO,

      Defendant.

---

**ORDER REGARDING PLAINTIFF'S AND DEFENDANT'S MOTIONS *IN LIMINE***

---

This matter is before the Court on both parties' motions *in limine*. *See* (Docs. ##
207, 223, 230 (Plaintiff's motion, response to Defendant's motion, and reply in support
of its own motion), 217, 224 (Defendant's motion and response to Plaintiff's motion)).[1]
For the following reasons, the Court grants in part and denies in part Plaintiff's motion *in
limine*, as explained below. Further, the Court reserves ruling in part, but otherwise
grants in part and denies in part Defendant's motion *in limine*, as explained below.

## I.    BACKGROUND

The Court incorporates its previous recitation of the facts and procedural history
of this case as stated in its Order Denying Defendants' Motions for Summary Judgment.

---

[1] Plaintiff was granted a reply because Defendant's response to Plaintiff's motion *in limine*
exceeded the Court's rule on page limits, which limits responses to eight pages.

(Doc. # 182 at 1–14.) Defendants appealed the Court's Order, and the United States Court of Appeals for the Tenth Circuit held that Individual Defendants Colorado Springs Police Department ("CSPD") Officers Daniel Patterson and Joshua Archer are entitled to qualified immunity, thereby reversing the Court's denial of the Individual Defendant CSPD Officers' motion for summary judgment. *Estate of Jeffrey Melvin v. City of Colorado Springs Colorado*, *et al.*, No. 23-1070 (10th Cir. Dec. 11, 2023) (order and judgment). The Tenth Circuit also declined to exercise pendant appellate jurisdiction over Defendant City of Colorado Spring's appeal. *Id.* The Court has ordered a Final Trial Preparation Conference for July 31, 2025, and a 10-day Jury Trial is set to commence on August 11, 2025. (Doc. # 239.)

On June 7, 2024, Plaintiff filed its motion *in limine* seeking the exclusion of evidence related to Jeffrey Melvin, Jr.'s ("Mr. Melvin") criminal history, alleged drug and alcohol use, hospital records other than those related to his hospitalization on April 26, 2018, and Defendant's medical expert testimony. (Doc. # 207.) On June 13, 2025, Defendant filed its own motion *in limine* seeking the exclusion of evidence related to whether CSPD Officers Patterson and Archer had probable cause or reasonable suspicion to reasonably believe Mr. Melvin committed any offense, evidence regarding the proportion of the force used by the Officers against the risk of harm by the flight of Mr. Melvin, the use of inflammatory terms at trial, cards, letters, and photos produced by Plaintiff one-and-a-half years after the fact discovery cutoff, a Transparency Matters report titled "Assessment of Colorado Springs Police Department Use of Force", and "deadly force" investigations pursuant to CSPD policy. (Doc. # 217.)

## II.    **APPLICABLE LAW**

### A.    **RULES 401 AND 402**

"Federal Rule of Evidence 402 provides that 'irrelevant evidence is not admissible.'" *Burke v. Regalado*, 935 F.3d 960, 1018 (10th Cir. 2019). Evidence is relevant if: it has "any tendency to make a fact more or less probable" and said fact is material, *i.e.*, the fact "is of consequence in determining the action." Fed. R. Evid. 401. On the other hand, the Court has broad discretion over evidentiary relevance determinations. *See*, *e.g.*, *United States v. Neal*, 718 F.2d 1505, 1509–10 (10th Cir. 1983). "The bar for admission under Rule 401 is very low." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (quotation omitted).

### B.    **RULE 403**

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. As with Rule 401 determinations, the Court has broad discretion to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Neal*, 718 F.2d at 1510. Even where other rules create avenues for admissibility, almost all evidence is subject to the overriding protection of Rule 403. *But see Burke*, 935 F.3d at 1018 (explaining that evidence of prior convictions admitted under Rule 609(a)(2) is not subject to 403 balancing).

C.      **RULES REGARDING EVIDENCE OF WITNESSES'S CHARACTER**

Rule 404(a) states the general rule that "[e]vidence of a person's character or
character trait is not admissible to prove that on a particular occasion the person acted
in accordance with the character trait." Fed. R. Evid. 404(a). The intent of this rule is to
prohibit the circumstantial use of character evidence in civil cases, even where closely
related to criminal charges. *See Ginter v. Northwestern Mut. Life Ins. Co.*, 576 F. Supp.
627, 629–30 (E.D. Ky. 1984) ("It seems beyond peradventure of doubt that the drafters
of Fed. R. Evid. 404(a) explicitly intended that all character evidence, except where
'character is at issue' was to be excluded" in civil cases).

However, for witnesses, character evidence may be admitted under Rules 607,
608, and 609. *Id.* at (a)(3). Rule 608(b) prohibits the admission, on direct examination,
of extrinsic evidence of specific instances of conduct to "attack or support a witness's
character for truthfulness." Fed. R. Evid. 608(b). Parties may only introduce specific
instances of conduct which might bear upon their truthfulness "by asking the witness on
cross-examination about the incident, not by introducing documents or calling other
witnesses." *United States v. Beltran-Garcia*, 338 F. App'x 765, 770 (10th Cir. 2009). The
United States Court of Appeals for the Tenth Circuit has explained that "[t]he reason for
excluding such extrinsic evidence is to avoid mini-trials that may consume a
disproportionate amount of time and confuse the issues." *United States v. Velarde*, 485
F.3d 553, 561 (10th Cir. 2007).

Rule 608(b) specifically carves out an exception to its prohibition on specific

instances of conduct for criminal convictions admissible under Rule 609. Fed. R. Evid.

608(b). Rule 609(a)(1) of the Federal Rules of Evidence provides:

> For the purpose of attacking the character for truthfulness of a witness, [ ]
> evidence that a witness other than an accused has been convicted of a
> crime shall be admitted, subject to Rule 403, if the crime was punishable
> by death or imprisonment in excess of one year under the law under which
> the witness was convicted . . .

Fed. R. Evid. 609(a)(1). The Tenth Circuit has interpreted this rule to "ordinarily" allow

cross examination as to "the nature of that conviction unless, after Rule 403 balancing,

the probative value of such evidence is outweighed by its prejudicial effect." *United

States v. Howell*, 285 F.3d 1263, 1268–69 (10th Cir. 2002).

In addition, subsection (a)(2) of this rule requires the admission of a criminal

conviction where "the court can readily determine that establishing the elements of the

crime required proving—or the witness's admitting—a dishonest act or false statement."

Fed. R. Evid. 609(a)(2).

## D.    RULE 611

Rule 611(a) of the Federal Rules of Evidence empowers the trial court to

"exercise reasonable control over the mode and order of examining witnesses and

presenting evidence so as to: (1) make those procedures effective for determining the

truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue

embarrassment." Fed. R. Evid. 611(a).

### E.  RULE 702

Rule 702 of the Federal Rules of Evidence empowers the trial court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a).

### III.     ANALYSIS

### A.   PLAINTIFF'S MOTION *IN LIMINE*

Plaintiff seeks to preclude evidence related to the following categories, and the Court considers these issues ripe for review:

> (1) Jeffrey Melvin, Jr.'s and other individuals' criminal history and other "bad acts" evidence; (2) hospital records of Mr. Melvin's prior treatment at Memorial Hospital, other than those medical records related to treatment immediately before Mr. Melvin's death on May 2, 2018; (3) procedural history in this case related to the original naming of CSPD Officers Archer and Patterson as individual defendants and their subsequent dismissal from this case; and (4) testimony from Defendant's medical experts related to any opinion in Defendant's previously disclosed expert reports that he or she did not specifically prepare and write.

(Doc. # 207.)

In response, Defendant has indicated that it does not oppose Plaintiff's motion *in limine* categories (3) and (4), above, which are therefore both granted. With respect to category (3), Defendant indicated that it will not mention the individual defendants' dismissal from the case but may remind the jury that CSPD Officers Patterson and Archer are not defendants and that the City of Colorado Springs is the only defendant. *See* (Doc. # 224 at 13-14). Plaintiff made no comment on reply with respect to this

6

statement. *See generally* (Doc. # 230). The Court will allow Defendant to remind the jury that the City of Colorado Springs is the only defendant as is necessary and appropriate.

Defendant has also clarified that it only will call Drs. Ronald M. Goldenberg and William R. Oliver to testify as to The Forensic Panel reports offered by Defendant in this case. (Doc. # 224 at 14.) Plaintiff has indicated that this is acceptable, but requests that the Court allow Plaintiff to re-raise the issue articulated in its motion *in limine* category (4), above, if Defendant later adds additional expert witnesses to its trial witness list. (Doc. # 230 at 4.) The Court will allow argument from Plaintiff if this occurs.

Defendant has objected to Plaintiff's remaining motion *in limine* categories, above: (1) Jeffrey Melvin, Jr.'s and other individuals' criminal history and other "bad acts" evidence; (2) hospital records of Mr. Melvin's prior treatment at Memorial Hospital, other than those medical records related to treatment immediately before Mr. Melvin's death on May 2, 2018.

1. Jeffrey Melvin, Jr.'s and other individuals' criminal history and other "bad acts" evidence

Plaintiff seeks to preclude evidence of Jeffrey Melvin, Jr.'s criminal history and other "bad acts" evidence. Specifically, evidence related to: (1) felony charges against and an arrest warrant for Mr. Melvin that were outstanding on April 26, 2018; (2) evidence of Mr. Melvin's alleged drug and alcohol use; (3) Mr. Melvin's parole from 2015–2017; (4) an alleged fight in August 2017, between Mr. Melvin and his mother; and (5) an incident involving the police and Jordan Bruno, a witness to the arrest on April 26, 2018, after Mr. Melvin died (presumably, the "other individual" referenced in Plaintiff's motion).

7

a.  *Mr. Melvin's felony charges and arrest warrant*

First, the Court will address Mr. Melvin's felony charges and arrest warrant, which were pending and active on April 26, 2018. Plaintiff argues that any probative value of this evidence is substantially outweighed by a danger of unfair prejudice and would lead to a distracting "mini trial over collateral issues." (Doc. # 207 at 4–5.) On reply, Plaintiff further argues that CSPD Officers Archer and Patterson did not know about Mr. Melvin's outstanding warrant when they encountered him on April 26, 2018, and, thus, any probative value of the warrant evidence is far outweighed by the potential for unfair prejudice and is a waste of time on tangential issues. (Doc. # 230 at 1–3.) Defendant, although conceding that CSPD Officers Patterson and Archer were unaware of Mr. Melvin's felony charges and active arrest warrant, argues that evidence of the arrest warrant is nonetheless relevant and admissible because Mr. Melvin himself was aware of the warrant and his knowledge could explain his motive for resisting arrest. (Doc. # 224 at 2–5.)

Several federal courts have held that a plaintiff's subjective motivations for fleeing or resisting arrest are immaterial to a § 1983 claim for excessive force. *See Settrini v. City of San Diego*, No. 3:20-cv-02273-RBM-BGS, 2023 WL 5519758, at *3 (S.D. Cal. Aug. 25, 2023); *Monroe v. Town of Haverstraw*, 639 F. Supp. 3d 459, 463 (S.D.N.Y. 2022); *Hawkins v. Walsh*, No. 4:16-CV-98-DMB-JMV, 2018 WL 1463351, at *2 (N.D. Miss. Mar. 23, 2018); *Gibson v. Columbia Police Dep't*, No. 09-4172-CV-C-SOW, 2012 WL 1144582, at *5 (Apr. 4, 2012). "Because the excessive force inquiry is an objective one, a plaintiff's subjective reason for fleeing from an officer is irrelevant."

*Hawkins*, 2018 WL 1463351, at *2 (citing *Molina v. City of Visalia*, No. 1:13-cv-1991, 2016 WL 8730723, at *4 (E.D. Cal. Sept. 16, 2016) ("[T]he subjective state-of-mind and any motivation for fleeing on the part of [plaintiffs] and the other passengers of the vehicle are not at issue in this action and are not relevant to a determination of the defendants' liability because [the arresting] officers [] were unaware of them.")). "What matters is whether the officers' use of force was 'objectively reasonable under the particular circumstances.'" *Gibson*, 2012 WL 1144582, at *5 (quoting *Copeland v. Locke*, 613 F.3d 875, 881 (8th Cir. 2010)).

While some of the very same courts cited above have identified an outstanding warrant at the time of the incident in question as potentially admissible (*see, e.g.*, *Monroe*, 639 F. Supp. 3d at 462), the Court finds Defendant's admission that neither CSPD Officer Patterson nor Archer were aware of Mr. Melvin's outstanding warrant (*see* Doc. # 224 at 2) as a key fact dispositive of this issue. Without this knowledge, it is apparent that the Officers were not executing the arrest warrant. The issue at hand is whether the *CSPD Officers* used excessive force. Again, although a plaintiff's fleeing or resisting arrest is relevant to the reasonableness of a police officer's use of force, a plaintiff's motivation for fleeing or resisting arrest is not. *See Settrini*, 2023 WL 5519758, at *3 (citing *Monroe*, 639 F. Supp. 3d at 463).

The fact of Mr. Melvin's resistance during the arrest can be shown by other evidence, such as body-cam videos and witness testimony. Thus, the Court finds that any additional evidence as to Mr. Melvin's possible intent or motivation to resist arrest is

ultimately irrelevant to the objective question of the Officers' use of force, and even if it did have some slight probative value, it poses too great a danger of unfair prejudice.

Further, the Court will not admit evidence of Mr. Melvin's felony charges underlying the arrest warrant because they are immaterial to the issues in this case. This is a civil case and Mr. Melvin's character is not at issue. *See Ginter*, 576 F. Supp. at 629–30 (E.D. Ky. 1984) ("It seems beyond peradventure of doubt that the drafters of Fed. R. Evid. 404(a) explicitly intended that all character evidence, except where 'character is at issue' was to be excluded" in civil cases). While Defendant argues that this evidence will not be used as character evidence, but instead as evidence relevant to Mr. Melvin's quality of life or actual and prospective future circumstances, the Court finds this position unavailing. Plaintiff represents that Dr. Parkman will not opine about the value of Mr. Melvin's life specifically and that Plaintiff is not seeking future lost wages (*see* Doc. # 230 at 2), so any evidence of the existence of the felony charges against Mr. Melvin and the details surrounding those charges are immaterial and any tangential probative value is substantially outweighed by the danger of unfair prejudice.

The unpublished Tenth Circuit case cited by Defendant in support of its hedonic damages argument for the admissibility of this evidence, *Baron ex rel. White v. Sayre Mem'l Hosp., Inc.*, 221 F.3d 1351, 2000 WL 1014982, *4 (10th Cir. 2000), is not binding precedent. Moreover, *Baron* merely held that the district court had not abused its discretion in admitting evidence on the plaintiff's criminal record related to the theory of hedonic damages and that, even assuming the court's evidentiary ruling was erroneous, it did not believe that admission of the evidence affected the plaintiff's "substantial

rights" or substantially influenced the trial's outcome thereby making any error of admission harmless. *Id.* Thus, the Tenth Circuit asked whether allowing the criminal history evidence was in error, not whether it is required in a case seeking hedonic damages.

The Court therefore grants Plaintiff's motion *in limine* as to both the issues of Mr. Melvin's outstanding arrest warrant and the underlying felony charges.

> b.   *Mr. Melvin's alleged drug and alcohol use*

Plaintiff seeks to prohibit evidence of Mr. Melvin's alleged drug and alcohol use, including on the night of the incident at issue in this case, with the narrow exception as it relates to the cause of Mr. Melvin's death. (Docs. ## 207 at 2–3, 230 at 3.) As with the felony charges and arrest warrant, CSPD Officers Archer and Patterson were unaware of whether Mr. Melvin had consumed drugs or alcohol in the past or whether he had consumed them on the night of the incident. Again, the issue at hand is whether the *CSPD Officers* used excessive force, not whether Mr. Melvin had consumed illicit substances. Mr. Melvin's resistance during the arrest can be shown by video evidence and witness testimony; whether he was under the influence of drugs or alcohol at the time is immaterial to the Officers' use of force.

As Plaintiff acknowledges, however, evidence of drug or alcohol in Mr. Melvin's system as it relates to his cause of death is material to this case. Thus, evidence of

toxicology reports and medical testimony regarding Mr. Melvin's admission to the
hospital on April 26, 2018, his subsequent treatment, and death, will not be precluded.

Further, for the same reasons discussed in Section III.A.1.a., above, the Court
finds unavailing Defendant's argument that evidence of Mr. Melvin's alleged drug or
alcohol use is relevant to hedonic damages. Again, Plaintiff represents that Dr. Parkman
will not opine about the value of Mr. Melvin's life specifically and that Plaintiff is not
seeking future lost wages (*see* Doc. # 230 at 2), so any evidence of Mr. Melvin's drug
and alcohol use is immaterial, and any tangential probative value is substantially
outweighed by the danger of unfair prejudice.

The Court therefore grants Plaintiff's motion *in limine* as to Mr. Melvin's alleged
drug and alcohol use, with Plaintiff's agreed-to narrow exception as it relates to the
cause of Mr. Melvin's death.

### c.    *Mr. Melvin's parole from 2015–2017*

Plaintiff requests to preclude evidence of Mr. Melvin's parole from 2015–2017.
(Docs. ## 207 at 1, 230 at 2.) Defendant argues that this evidence will not be used to
show character, but, again, will instead be used as evidence related to damages. (Doc.
# 224 at 7.) Just as with Mr. Melvin's other criminal history, evidence that Mr. Melvin
was previously on parole and details surrounding his parole are immaterial and any
tangential probative value is substantially outweighed by the danger of unfair prejudice.
(*See supra* Secs. III.A.1.a. & b.) The Court therefore grants Plaintiff's motion *in limine*
regarding Mr. Melvin's parole history.

d.    *Alleged August 2017 fight between Mr. Melvin and his mother*

Plaintiff requests to preclude evidence of an alleged fight between Mr. Melvin and

his mother, Jerri Craft-Thornton, in August of 2017, after which no charges were

brought. (Doc. # 207 at 2.) Plaintiff has stated that it will not call Mr. Melvin's mother as

a witness at trial (*id.*), and, in response, Defendant has agreed not to introduce

evidence of the alleged fight unless and until Plaintiff opens the door to refute testimony

of a harmonious relationship between Mr. Melvin and his mother. (Doc. # 224 at 8.) The

Court therefore denies as moot Plaintiff's motion *in limine*.

e.    *Incident involving the police and Jordan Bruno after Mr. Melvin's
      death*

Plaintiff seeks to preclude evidence of an incident in May 2018 (weeks after Mr.

Melvin's death) involving the police and Jordan Bruno, a witness to the arrest of Mr.

Melvin on April 26, 2018. (Doc. # 207 at 2.) This is presumably the "other individual" that

Plaintiff was referring to in its motion. *See* (*id.* at 1). Plaintiff has agreed not to call Mr.

Bruno as a witness at trial (*id.* at 2, 8) and, based on Plaintiff's assurances, Defendant

will not introduce evidence of Mr. Bruno's actions during this May 2018 event (Doc. #

224 at 2). The Court therefore denies as moot Plaintiff's motion *in limine*.

2.    Hospital records of Mr. Melvin's treatment at Memorial Hospital prior to
      April 26, 2018

Plaintiff specifically seeks to preclude a proposed defense trial exhibit of over

5,000 pages of Mr. Melvin's records from Memorial Hospital, including those from Mr.

Melvin's 2007 admission. (Doc. # 207 at 6.) In response, Defendant points out that it

seems Plaintiff is not only objecting to the admission of the medical records themselves,

but also the events leading to and surrounding those medical visits. (Doc. # 224 at 11 n.6.) Defendant then states that it will not seek to introduce <u>any</u> of Mr. Melvin's medical records, but instead medical expert testimony regarding Mr. Melvin's medical history to the extent it informed the experts' conclusions on his cause of death. (*Id.* at 12.) On reply, Plaintiff acknowledges Defendant's concession not to introduce the 5,000 pages of Mr. Melvin's records from Memorial Hospital it previously listed on its exhibit list and "sees no need to further argue this issue." (Doc. # 230 at 4.) Plaintiff is satisfied that any objections regarding specific medical expert testimony can be addressed at trial on a question-by-question basis. (*Id.*) Thus, the Court denies as moot Plaintiff's motion *in limine*.

Further, although Defendant did not specifically move to limit the introduction of the Memorial Hospital records from Mr. Melvin's hospitalization immediately preceding his death, it did indicate that it does not believe all those records should be admitted into evidence. (Doc. # 224 at 11.) Plaintiff has represented that it is willing to confer with Defendant ahead of trial to stipulate to a limited subset of medical records from the hospital visit immediately preceding Mr. Melvin's death for admission at trial. (Doc. # 230 at 4 n.1.) The Court directs the parties to meet and confer on this issue before the Final Trial Preparation Conference and to stipulate to those medical records related to Mr. Melvin's 2018 hospitalization which are to be offered into evidence.

**B.    DEFENDANT'S MOTION *IN LIMINE***

Defendant seeks to preclude evidence related to the following categories, and

the Court considers these issues ripe for review:

> (1) evidence related to whether CSPD Officers Patterson and Archer had
> probable cause or reasonable suspicion to reasonably believe Mr. Melvin
> committed any offense; (2) evidence regarding the proportion of the force
> used by the Officers against the risk of harm potentially caused by the
> flight of Mr. Melvin; (3) the use of inflammatory terms such as "homicide"
> and "killed" at trial; (4) cards, letters, and photos produced by Plaintiff one-
> and-a-half years after the fact discovery cutoff; (5) a Transparency Matters
> report titled "Assessment of Colorado Springs Police Department Use of
> Force"; and (6) "deadly force" investigations pursuant to CSPD policy.

(Doc. # 217.)

In response, Plaintiff has indicated that it does not oppose Defendant's motion *in*

*limine* category (6), above, "deadly force" investigations pursuant to CSPD policy, which

is therefore denied as moot. Plaintiff has objected to the remaining categories.

> 1.    <u>Evidence related to whether CSPD Officers Patterson and Archer had
> probable cause or reasonable suspicion to reasonably believe Mr. Melvin
> committed any offense</u>

Defendant seeks to preclude evidence related to whether CSPD Officers

Patterson and Archer had probable cause or reasonable suspicion to reasonably

believe Mr. Melvin committed any offense. (Doc. # 217 at 1–2.) Plaintiff responds that "it

does not intend to argue that it would have been illegal for Officers Archer and

Patterson to arrest Mr. Melvin, but rather that because, among other things, no probable

cause existed to believe [Mr. Melvin] committed any offense, the justification for using

force to detain him would support much less significant force than otherwise." (Doc. #

223 at 2.) Plaintiff argues that this is the "severity of the crime" factor that must be

considered in an excessive force case according to *Graham v. Connor*, 490 U.S. 366, 396 (1989). (*Id.* at 1.)

The Court agrees with Plaintiff. In evaluating the totality of the circumstances, "severity of the crime" is one of the factors considered, which includes an assessment of which crimes the officers were investigating. *King v. Hill*, 615 F. App'x 470, 474–75 (10th Cir. 2015) (citing *Graham*, 490 U.S. at 396). Defense has argued that the Officers believed there had been several crimes Mr. Melvin may have committed as justification for using the force they did to arrest him—at the very least, reasonable suspicion that Mr. Melvin was obstructing a peace officer or interfering with their active investigation, and potentially felony burglary, felony trespass, assault, harassment, or even human trafficking of a minor for sexual servitude. *See* (Doc. # 123 at 6–8). It would be unfairly prejudicial to Plaintiff to prevent the jury from considering whether the Officers' beliefs were reasonable to justify the level of force used to detain Mr. Melvin.

Moreover, Plaintiff's claim against Defendant alleges that it is municipally liable for the Officers' actions and has a custom and practice of using excessive force to arrest individuals without probable cause, failing to adequately train and supervise its officers on the probable cause and reasonable suspicion requirements. *See* (Doc. 30 ¶¶ 44, 80, 82). For this additional reason, evidence related to whether CSPD Officers Patterson and Archer had probable cause or reasonable suspicion to reasonably believe Mr. Melvin committed any offense is material to this case. *See Isayeva v. Cty. of Sacramento*, No. 2:13-CV-02015-KJM-KJN, 2014 WL 2040021, at *2–3 (E.D. Cal. May 15, 2014); *Pichardo v. Alvarez*, No. 11-4975 (SRC), 2015 WL 163063, at *4 (D.N.J. Jan.

12, 2015); *Frye v. City of Sacramento*, No. 2:22-cv-1936-DJC-CSK, 2024 WL 1676496,

at *1 (E.D. Cal. Apr. 17, 2024) (slip copy).

The Court therefore denies Defendant's motion *in limine*.

2.    Evidence regarding the proportion of the force used by the Officers
       against the risk of harm potentially caused by the flight of Mr. Melvin

Defendant seeks to preclude evidence related to the potential harm of Mr. Melvin

fleeing the scene. (Doc. # 217 at 2–3.) Plaintiff responds that the danger posed by a

suspect if he were to flee is another *Graham* factor in a § 1983 excessive force claim—

"whether the suspect poses an immediate threat to the safety of the officers or others."

(Doc. # 223 at 3.) Just as with the above-discussed *Graham* factor, this factor is

relevant to the jury's analysis of whether excessive force was used considering the

totality of the circumstances in this case. *See Halik v. Brown Carey*, No. 19-cv-02354-

KMT, 2020 WL 5848797, at *9 (D. Colo. Sept. 30, 2020) (considering such factors as

whether the plaintiff was armed, acting aggressively, or in any way confrontational

toward the police or other individuals present).

Defense has previously argued that "[t]he manner and circumstances under

which Mr. Melvin entered the apartment evidenced that he may be armed and intend to

harm someone in the apartment." (Doc. # 123 at 9.) Plaintiff disputes this assertion.

(Doc. 144 at 4.) Further, "[t]he Officers concede that Mr. Melvin 'did not initiate any

physical contact; he never attempted to hit, kick, bite, or spit at the Officers; and he

never threatened anyone." *Estate of Jeffrey Melvin v. City of Colorado Springs*

*Colorado*, *et al.*, No. 23-1070, at 5 (10th Cir. Dec. 11, 2023) (order and judgment). This

dispute between the parties is material to the *Graham* factor of whether Mr. Melvin

17

posed an immediate threat to the safety of the Officers or others. The Court therefore

denies Defendant's motion *in limine*.

      3.    <u>The use of inflammatory terms such as "homicide" and "killed" at trial</u>

Defendants move to exclude inflammatory terms such as "homicide" and "killed,"

arguing that use of such terms would mislead or incite the passions of the jury. (Doc. #

217 at 3–4.) Plaintiff argues that the jury is capable of understanding the meaning of the

term "homicide" as used by the coroner to classify Mr. Melvin's manner of death in the

autopsy report, and Defendant is free to cross-examine the coroner about the term.

(Doc. # 223 at 4–5.)

The Court is permitted to limit the use of legal terminology that may confuse or

mislead the jury. *Silva v. Chung*, No. 15-00436 HG-KJM, 2020 WL 515810, at *14 (D.

Haw. Jan. 31, 2020) (citing Fed. R. Evid. 403; *Crawford v. City of Bakersfield*, No. 1:14-

cv-01735-SAB, 2016 WL 5870209, *8 (E.D. Cal. Oct. 6, 2016) (granting defendants'

motion *in limine* to exclude terms such as "murder," "homicide," and killed" as it relates

to the manner of decedent's death)). As recognized by the court in *Silva*, "[h]omicide

has both a legal and a scientific explanation, and the Court limited the Parties' use of

the term so as not to confuse or manipulate the jury due to common perceptions that

the word 'homicide' is equivalent to 'murder.'" *Id.* However, just as in *Silva*, this Court

will not exclude the term "homicide" from trial entirely. The meaning of "homicide" for

purposes of this case will be limited to the autopsy report and the death certificate. The

term "homicide" cannot be put before the jury until the term has been explained by the

medical experts and only the medical experts may explain the meaning of "homicide" within the context of the autopsy report and the death certificate.

The Court, however, will preclude the use of the term "killed" as argumentative and likely to inflame the passions of the jury. Further, Plaintiff has agreed not to describe Mr. Melvin's death as "murder" (Doc. # 223 at 6), so that term will be precluded from use at trial, as well. The Court therefore grants in part and denies in part Defendant's motion *in limine*.

4.  <u>Cards, letters, and photos produced by Plaintiff one-and-a-half years after the fact discovery cutoff</u>

Defendant seeks to preclude cards and letters written by and photos of Mr. Melvin, which were produced by Plaintiff in a Seventh Supplemental Disclosure on May 24, 2024. (Doc. # 217 at 4–5.) Plaintiff responds that the late disclosure of the cards, letters, and photos, even assuming *arguendo* that Plaintiff's late disclosure of them is not substantially justified, is harmless. (Doc. # 223 at 7.) The Court is not satisfied with Plaintiff's argument. The Court finds a lack of justification for only first discovering this evidence from a known witness a year-and-a-half after the close of fact discovery. Plaintiff could have inquired about this evidence sooner instead of merely relying on the affirmative actions of one of its witnesses. The Court also disagrees that allowing this late-produced evidence is harmless. Allowing the evidence so late after the close of discovery and after preparation of expert witnesses would be unfairly prejudicial to Defendant. The Court therefore grants Defendant's motion *in limine*.

5.      Transparency Matters report titled "Assessment of Colorado Springs
        Police Department Use of Force"

Defendant seeks to preclude a Transparency Matters report titled "Assessment

of Colorado Springs Police Department Use of Force" ("TM Report"). (Doc. # 217 at 6.)

Defendant represents that the TM Report is a "report analyzing CSPD use of force data

over a four-year period: from January 1, 2017 through December 31, 2020" and argues

that it should be excluded because it includes data based on CSPD use of force

incidents occurring for two-and-a-half years after April 26, 2018, and it addresses

racial/ethnic disparity, which was only relevant to Plaintiff's dropped equal protection

claim. (*Id.* at 6–8.) Plaintiff argues that evidence of racial bias discussed in the report is

relevant to Plaintiff's remaining excessive force claim and that the report discusses "not

only racial bias in uses of force but also use of force by CSPD in general, with the vast

majority of the report focused on the latter rather than merely the former" and "explicitly

addresses CSPD's training on use of force." (Doc. # 223 at 8.)

The Court agrees that allowing certain portions of the TM Report that explicitly

address racial/ethnic disparity or racially disparate use of force would be unfairly

prejudicial given that Plaintiff has dropped its equal protection claim. However, the

portions of the TM Report that address CSPD use of force policies and training are

directly material to the issues for Plaintiff's remaining claim. Therefore, the Court directs

the parties to meet and confer, prior to the Final Trial Preparation Conference, and

stipulate to a redacted version of the TM Report for admission into evidence at trial or,

alternatively, agree to only those sections that will be introduced at trial. For example,

Sections 2, "Review of CSPD Policies and Practices," 5, "Types of Force, Force

Effectiveness, and Injuries" (which includes discussions of TASER probe impact and bodily injury), and 8.3.5, "Training," are clearly relevant and material to Plaintiff's claim. However, by way of further example, admission of Section 4.5, "Racial/Ethnic Disparity (Benchmark) Analyses," would be unfairly prejudicial to Defendant given that Plaintiff has dropped its equal protection claim.

The Court therefore reserves ruling in part, but otherwise grants in part and denies in part the remainder of Defendant's motion *in limine*.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS that Plaintiff's Motion *in Limine* (Doc. # 207) is GRANTED IN PART and DENIED IN PART as set forth in this Order. Further, for the foregoing reasons, the Court reserves ruling in part, but ORDERS that Defendant's Motion *in Limine* (Doc. # 217) is otherwise GRANTED IN PART and DENIED IN PART as set forth in this Order.

DATED: March 11, 2025

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge